IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BOULDER FALCON, LLC, a Utah limited liability company,<br><br>                Plaintiff,<br>v.<br><br>ROBERT BROWN, an individual, and IFLYAJET, INC., a Georgia corporation<br><br>                Defendants,<br>v.<br><br>BOULDER FALCON, LLC, a Utah limited liability company, BOULDER VENTURES DEVELOPMENT, INC., a Utah corporation, and JEFFREY M. VITEK, an individual,<br><br>                Counterclaim Defendants. | **MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS IN LIMINE**<br><br>Case No. 2:22-cv-00042-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

      Before the court are motions in limine filed by plaintiff Boulder Falcon, LLC ("Plaintiff" or "Boulder Falcon"), ECF No. 198, and Defendants Robert Brown ("Brown") and IFLYAJET INC. ("IFJ") (collectively, "Defendants"), ECF Nos. 199, 200, 203, 204, 205, 206, 209, in anticipation of their upcoming trial. Plaintiff filed this lawsuit seeking relief for contract and tort claims related to an alleged contract ("Shared Ownership Agreement") for the shared ownership of a Dassault Falcon 50 Aircraft ("Aircraft"). Defendants filed counterclaims, asserting contract and tort claims related to the same agreement against Boulder Falcon, Boulder Ventures Development, Inc. ("Boulder Ventures"), and Jeffrey M. Vitek ("Vitek").

      For the reasons presented herein, the court **GRANTS** Defendants' first, second, and fifth motions in limine, **DENIES** Defendants' fourth, sixth, and seventh motions in limine,

**PARTIALLY GRANTS** and **PARTIALLY DENIES** Defendants' third motion in limine, and **GRANTS** Plaintiff's motion in limine.

## ANALYSIS

The court first examines and decides Defendants' motions in limine. It then turns to Plaintiff's motion in limine.

### I.    DEFENDANTS' MOTIONS IN LIMINE

#### A. MOTIONS TO EXCLUDE TESTIMONY REGARDING FAA REGULATIONS

Defendants move to exclude various testimony regarding Federal Aviation Administration ("FAA") regulations. *See* ECF Nos. 199, 205, 209 ("Defs.' Mots. 1, 5, 7"). Defendants argue that whether they violated FAA regulations is irrelevant to Plaintiff's claims.

Evidence is admissible only if it is relevant. FED. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the actions." FED. R. EVID. 401. Even if evidence is relevant, a court may still exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Here, evidence of whether Defendants violated FAA regulations relates directly to Plaintiff's breach of contract claim. For example, the Shared Ownership Agreement requires the "Manager" to ensure the Group's compliance with FAA regulations. ECF No. 100-1 ("Shared Ownership Agreement") at 2. If a jury finds that Defendants violated these regulations, and that the Shared Ownership Agreement is enforceable, Defendants may be liable for breach of contract.

FAA regulations may also be probative of whether Plaintiff signed and delivered the Shared Ownership Agreement. Plaintiff argues that Brown's characterization of the agreement between the parties would be illegal under FAA regulations, thereby undermining Brown's

allegation that the Shared Ownership Agreement was not an enforceable contract. Thus, FAA regulations may be relevant to the issue of whether a written contract existed between the parties.

Testimony regarding Defendants' compliance with FAA regulations is highly probative to Plaintiff's breach of contract claim. Any potential prejudice to Defendants does not outweigh its probative value. Therefore, the court will admit evidence concerning whether Defendants violated FAA regulations as it is highly relevant to the issues of whether a contract existed between the parties and whether that contract was breached.

Still, the form of testimony Plaintiff proposes may not be admissible under other rules of evidence. The court addresses the specific type of evidence Defendants seek to exclude in Motions 1, 5, and 7 respectively below.

1. **Expert Testimony of Reg Vitek (Motion in Limine #1)**

Defendants move to prohibit Plaintiff's expert witness, Reg Vitek, from offering opinions that (1) IFJ retains operational control over the aircraft that it manages; (2) that IFJ is inappropriately operating a charter service in violation of FAA regulations; and (3) that Brown was required to file the Shared Ownership Agreement with the FAA. *See* Defs.' Mot. 1. Defendants argue that this testimony is inadmissible under Rule 702, 401, and 403.

Plaintiff proposes that Reg Vitek will "educate the jury regarding the FAA and Federal Aviation Regulations," "explain to the jury that various FAA regulations are applicable to privately owned airplanes," and "help the jury navigate the complicated regulations so the jury may apply those regulations to the facts presented at trial." ECF No. 231 ("Pl's Opp. Mot. 1") at 3. The court has already concluded that whether Defendants violated FAA regulations is relevant to Plaintiff's breach of contract claim. However, to the extent Plaintiff seeks to admit Reg Vitek's opinions as to the meaning and application of these regulations and whether Defendants are in violation of them, the court excludes this evidence as impermissible legal conclusions.

Although Rule 702 allows experts to provide testimony in the form of an opinion, it does not allow experts to instruct the jury on the law. *See Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). The risk of a witness instructing the jury on the law escalates when the witness is a lawyer because "[t]here is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness." *Id.*

> It must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic concept. Reducing the proposition to a more practical level, it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently.

*Id.* (internal quotations omitted). Thus, it is the court, not an expert witness, that should educate the jury as to which FAA regulations apply in this case.

This does not mean that Reg Vitek is prohibited from testifying as to whether Defendants took certain actions that the jury may find violated FAA regulations. For example, Reg Vitek could testify as to whether the aircraft was registered with the FAA. But Reg Vitek may not testify whether Brown was required to register the aircraft with the FAA under its regulations. This is the court's role. Therefore, the court **GRANTS** Defendants' motion in limine to exclude expert testimony of Reg Vitek that offers opinions as to what FAA regulations apply in this case, what those regulations require, or whether Defendants violated those requirements.

2. **Lay Opinions Regarding Alleged FAA Violations (Motion in Limine #5)**

Defendants also seek to exclude lay opinions that conclude that IFJ violated any FAA regulations or any testimony regarding the meaning of certain FAA regulations. *See* Defs.' Mot. 5 at 3.

A lay witness may offer testimony in the form of an opinion if it is "rationally based on the witness's perception . . . helpful to clearly understanding the witness's testimony or to determining

4

a fact in issue; and . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. A lay witness therefore may not provide testimony either concluding that Defendants violated any FAA regulations or instructing the jury on the meaning of certain FAA regulations. This testimony would inevitably be based on specialized knowledge reserved for expert witnesses, and as previously explained, would usurp the role of the court in instructing the jury on the law to apply.

Lay witnesses may offer testimony regarding the Defendants' actions or omissions that are relevant to whether a violation occurred. But explaining which FAA regulations apply to the facts of the case is the role of the judge and concluding whether Defendants failed to follow such regulations is the role of the jury. Thus, the court **GRANTS** Defendants' motion to exclude lay witness testimony in the form of an opinion as to whether Defendants violated FAA regulations.

   3. **Evidence that FAA Regulations Govern Aircraft Ownership (Motion in Limine #7)**

Finally, Defendants seek to prohibit evidence or argument that FAA regulations govern aircraft ownership under Rule 401 and 403. *See* Defs.' Mot. 7 at 1. Defendants argue that state law governs ownership and thus FAA regulations regarding aircraft ownership are irrelevant to Plaintiff's case. On the other hand, Plaintiff seeks to admit this evidence to (1) contradict that Brown permitted Boulder Falcon to use the aircraft without any substantive ownership interest because this would violate FAA regulations and (2) prove that Defendants breached the Shared Ownership Agreement. The court agrees that FAA regulations are highly relevant to both issues.

First, FAA regulations discussing ownership are important for the jury to consider when assessing the credibility of Brown's defenses and his claim that a written contract never existed. Brown argues that he allowed Boulder Falcon, a potential buyer, to use the Aircraft as a courtesy, not as a right under contract. However, Plaintiff alleges that this oral arrangement violated FAA regulations. Therefore, whether Brown's description of the arrangement between the parties

5

violates federal law is probative of whether Brown's characterization of the agreement is believable.

Second, to the extent FAA regulations are used to prove Defendants breached the Shared Ownership Agreement, the evidence is also relevant. The Agreement requires the "Manager" to "take all actions which may be necessary or appropriate . . . for the continuation of the Group's valid existence as a registered owner[] of the aircraft . . . ." Shared Ownership Agreement at 2. Plaintiffs allege Brown breached this part of the agreement by failing to register them as owners with the FAA. How the FAA defines owner is thus relevant to determining whether Defendants were required to register Plaintiff.

Accordingly, the court **DENIES** Defendants' motion to exclude evidence of FAA regulations regarding aircraft ownership.

B. MOTION TO EXCLUDE SETTLEMENT NEGOTIATIONS (MOTION IN LIMINE #2)

Defendants next move for an order precluding admission of statements made during settlement negotiations. *See* ECF No. 200 ("Defs.' Mot. 2"). Statements made during settlement negotiations are inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement." FED. R. EVID. 408. The court finds that Exhibits A through O, attached to Defendants' motion, all contain evidence of email correspondence between the parties which are clearly settlement negotiations. *See SFF-TIR, LLC v. Stephenson*, 250 F.Supp. 3d 856, 1008 (D. Okla. 2017) ("Courts have regarded discussions between two parties as settlement negotiations if . . . parties' counsel conceded in a written communication between themselves that litigation was possible."); *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) ("[w]here a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408. The party seeking admission of an offer under those

6

circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim.").

The court recognizes the purpose of Rule 408 is to encourage settlement of disputes outside the courtroom. *See O'Hearon v. Castleview Hosp.*, 156 F.3d 1244, 1246 (10th Cir. 1998); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003); *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682 (7th Cir. 2005) ("In deciding whether Rule 408 should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations."). Thus, the court **GRANTS** Defendants' motion to exclude this evidence to prove the validity of any claim.

However, the court reserves the decision on whether to admit this evidence for another purpose not prohibited under Rule 408. *See* FED. R. EVID. 408; *United States v. Bailey*, 327 F.3d 1131, 1146 (10th Cir. 2003). For example, a court may admit conduct or particular statements made during settlement negotiations to demonstrate a party's knowledge or intent. *See Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719 (10th Cir. 1984); *EEOC v. Sonic Drive-In of Los Lunas, Ltd.*, 2010 U.S. Dist. LEXIS 154236 (D. N.M. 2010) (admitting evidence to show Plaintiff's intent to add additional class members); *Wine & Canvas Development, LLC v. Muylle*, 868 F.3d 534, 540 (7th Cir. 2017) ("Although statements made in settlement negotiations are inadmissible to prove liability on the underlying claim, they may be admissible for other purposes, including to show the defendant's ... intent." (internal quotation marks omitted)).

Plaintiff alleges that Defendants "seek to bar Boulder Falcon from demonstrating that it attempted to pay off the 'Existing Loan' identified in Section 10(b) of the Shared Ownership Agreement, while simultaneously telling the jury at trial (even in its Opening Statement) that

Boulder never exercised the option." ECF 224 ("Pl.'s Opp. 2") at 9. Thus, if Defendants open the door by making this argument, Plaintiff may introduce conduct or statements made during settlement negotiations for the limited purpose of demonstrating their intent to pay off the loan and Defendants' knowledge of that intent.

### C. MOTION TO EXCLUDE EVIDENCE RELATING TO GEYER AVIATION LITIGATION (MOTION IN LIMINE #3)

Defendants next seek exclusion of evidence or argument relating to a lawsuit between themselves and Geyer Aviation, LLC ("Geyer Aviation"). *See* ECF No. 203 ("Defs.' Mot. 3"). Evidence proffered by Plaintiffs include (1) IFJ's complaint in which Defendants alleged Geyer Aviation breached the Shared Ownership Agreement and (2) Defendants' written correspondence indicating Geyer Aviation had not dropped out of the Shared Ownership Agreement on January 13, 2022. Defendants argue this evidence is irrelevant under Rule 401, and if relevant, highly prejudicial under Rule 403.

Only relevant evidence is admissible. FED. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the actions." FED. R. EVID. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Plaintiff seeks to admit Defendants' complaint against Geyer Aviation, arguing that it is relevant to show Defendants acknowledged the enforceability of the Shared Ownership Agreement. The jury will be tasked with determining whether Plaintiff validly accepted the contract; thus, the evidence must tend to make Plaintiff's valid acceptance more or less probable to be relevant.

Defendants allege that because the Agreement contemplated the participation of Geyer Aviation, Plaintiff could not accept the contract once Geyer Aviation had dropped out of the arrangement. *See* ECF No. 106 ("Defs.' Counterclaims") at 15-16. Defendants also allege that Geyer Aviation "quickly stopped paying and dropped out" of the Agreement. *Id.* at 15. However, Defendants' counsel sent email correspondence to Geyer Aviation admitting Geyer Aviation's "participation in the group did not end" as of January 13, 2022. *See* ECF No. 203-2 at 1. Therefore, if Defendants argue that Geyer Aviation dropped out of the arrangement thereby prohibiting Plaintiff's acceptance of the Shared Ownership Agreement, the admission contained in the email is relevant to the jury's task.

However, unlike the admission contained in the email, allegations contained in a complaint, when alleged in the alternative, do not constitute admissions. *See Nutraceutical Corp. v. Affordable Naturals, LLC*, 2017 U.S. Dist. LEXIS 168470, at *33 n.9 (D. Utah 2017) ("'[A]n admission in one alternative in the pleadings in the case does not nullify denial in another alternative as a matter of pleading.'" (quoting Michael H. Graham, Handbook of Federal Evidence § 801:26)). Even if the allegations in the complaint may be slightly probative as to whether a contract existed, the risk of misleading the jury and confusing the issues far outweighs any probative value. Ultimately, the litigation ended in a default judgment in which the court did not grant IFJ relief based on its contract claim. Thus, admitting the allegations made in the complaint would require explaining to the jury the nuance of alleging claims in the alternative. And, because these issues were never actually litigated, any documents relating to that litigation are only slightly probative. Admitting evidence of the litigation would serve only to confuse this issue. Therefore, the probative value of Defendants' complaint against Geyer Aviation is substantially outweighed by the risk of misleading the jury and confusing the issues.

9

Accordingly, the court **PARTIALLY GRANTS** and **PARTIALLY DENIES** Defendants' motion to exclude evidence regarding its litigation with Geyer Aviation. The court excludes Defendants' complaint against Geyer Aviation under Rule 403. But the email containing IFJ's admission that Geyer had not pulled out of the Shared Ownership Agreement as of January 13, 2022 is relevant if Defendants assert that Geyer Aviation dropped out of the Group at an earlier date.

### D. MOTION TO BIFURCATE TRIAL (MOTION IN LIMINE #4)

Defendants also move to bifurcate the trial with respect to the issues of liability and punitive damages. *See* ECF No. 204 ("Defs.' Mot. 4"). Federal Rule of Civil Procedure 42(b) allows a court to conduct separate trials of issues "for convenience, to avoid prejudice, or to expedite and economize." The court has "broad discretion in deciding whether the sever issues for trial." *Easton v. Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985). Bifurcation is only appropriate where the issues are separable, meaning "[a]lthough the same witnesses may testify in both phases, the issues and testimony are different." *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 965 (10th Cir. 1993). For example, a court may bifurcate the issues of liability and damages "where proof of damages does not form an element of the claim" or where proof of punitive damages "can prove extensive and complicated and may distract jurors from questions of liability and focus them instead on the relative means of the parties." *Alfwear, Inc. v. Icon Health & Fitness, Inc.*, 2018 U.S. Dist. LEXIS 211385, at *2 (D. Utah 2018) (citing *Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005); *Angelo*, 11 F.3d at 964-65).

Defendants argue that bifurcation is necessary to avoid prejudice, noting that highlighting a party's wealth, which is necessary to determine punitive damages, may be prejudicial to the issues of liability and actual damages. Defendants also argue that bifurcation would serve judicial economy, as Plaintiff may only recover punitive damages if the jury finds Defendants liable for

conversion. Therefore, the presentation of evidence for punitive damages may be unnecessary if the jury does not grant Plaintiff relief on its conversion claim.

Plaintiff responds that the evidence it will offer to prove its claims in its case in chief will be the same as the evidence it plans to use to prove punitive damages. To prove its breach of contract, conversion, and alter ego claims, Plaintiff plans to introduce evidence of Defendants' assets and financial accounts, thereby exposing the jury to Defendants' wealth. Plaintiff proffers no exhibits or witnesses that will be used to prove punitive damages that will not also be used to support its case in chief. Bifurcating the trial will not only be inefficient, but will also be unnecessary since the evidence of IFJ's financial condition is also relevant to prove issues of liability. Accordingly, the court **DENIES** Defendants' motion to bifurcate issues of liability and punitive damages.

E.  **MOTION TO EXCLUDE SPECULATIVE TESTIMONY (MOTION IN LIMINE #6)**

Finally, Defendants motion to exclude evidence regarding whether Plaintiff sent an executed copy of the Shared Ownership Agreement in a UPS envelope to Defendants. *See* ECF No. 206 ("Defs.' Mot. 6"). Defendants argue that Plaintiff's witnesses do not have personal knowledge of the contents of the UPS envelope and therefore may not speculate as to what was enclosed within the envelope.

Rule 602 allows a witness to "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. None of Boulder Falcon's proposed witnesses have personal knowledge as to whether the envelope containing the Shared Ownership agreement was sent. Defendants argue that the UPS notification indicates that Tammy Sills of Boulder Venture Development sent the envelope, but Plaintiffs do not offer Tammy Sills as a witness with personal knowledge. *See* Defs.' Mot. 6 at 1.

However, "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice." FED. R. EVID. 406. Therefore, Plaintiff may offer evidence of the general business practices of Boulder Falcon, which include standard routines for signing and delivering signatures. "The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." *Id.*

Jeffrey Vitek may not testify as to the contents of the UPS envelope that was sent to Defendants because he has no personal knowledge on that issue. But he may testify about Boulder Falcon's routine practice for signing and delivering documents and whether he recalls personally following that standard business practice for the Shared Ownership Agreement. And business records showing when and where the UPS envelope was sent are also admissible. *See* FED. R. EVID. 803. The jury may then make an inference based on this evidence as to whether an executed contract was delivered to Defendants. Accordingly, the court **DENIES** Defendants' motion to exclude testimony regarding the UPS envelope. Although Plaintiff's witnesses may not speculate as to the contents of the UPS envelope, they may offer testimony regarding Boulder Falcon's routine business practices under Rule 406.

II. **PLAINTIFF'S MOTION IN LIMINE**

A. MOTION TO EXCLUDE DEFAULT JUDGMENT

Plaintiff moves to exclude the default judgment issued against Geyer Aviation in its dispute with IFJ. Plaintiffs argue that the default judgement will only confuse the jury on the issues. The court agrees. As stated above, the issues contained in the default judgment were never actually litigated so their probative value as to Plaintiff's claims are weak. Any probative value provided by the default judgment is substantially outweighed by a significant risk of misleading the jury and confusing the issues. The court **GRANTS** Plaintiff's motion to exclude the default judgment.

## CONCLUSION & ORDER

For the foregoing reasons, the court **GRANTS** Defendants' first, second, and fifth motions in limine, **DENIES** Defendants' fourth, sixth, and seventh motions in limine, **PARTIALLY GRANTS** and **PARTIALLY DENIES** Defendants' third motion in limine, and **GRANTS** Plaintiff's motion in limine.

DATED October 24, 2024

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge