IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BOULDER FALCON, LLC, a Utah limited liability company,<br><br>       Plaintiff,<br>v.<br><br>ROBERT BROWN, an individual, and IFLYAJET, INC., a Georgia corporation<br><br>       Defendants,<br>v.<br><br>BOULDER FALCON, LLC, a Utah limited liability company, BOULDER VENTURES DEVELOPMENT, INC., a Utah corporation, and JEFFREY M. VITEK, an individual,<br><br>       Counterclaim Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES**<br><br>Case No. 2:22-cv-00042-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

Before the court is a Motion for Judgment as a Matter of Law filed by Defendants Robert Brown ("Brown") and IFLYAJET INC. ("IFJ") (collectively, "Defendants"). ECF No. 306 ("Defs.' Mot."). Plaintiff Boulder Falcon, LLC ("Plaintiff" or "Boulder Falcon") opposes the motion. ECF No. 312 ("Pl.'s Opp."). Both parties also filed Motions for Attorney Fees. ECF Nos. 296 (Pl.'s Mot. Att'y Fees"), 301 (Defs.' Mot. Att'y Fees"). For the reasons set forth herein, the court **DENIES** Defendants' Motion for Judgment as a Matter of Law, **GRANTS** Plaintiff's Motion for Attorney Fees, and **DENIES** Defendants' Motion for Attorney Fees.

## BACKGROUND

This action stems from a breach-of-contract claim and a conversion claim involving a dispute over a private jet. The conflict centered around the validity of a contract, the Shared

Ownership Agreement ("the Agreement"). ECF No. 297-2 ("Shared Ownership Agreement"). The Agreement formed a group ("the Group") that consisted of members Boulder Falcon, IFLYAJET, and Geyer Aviation, LLC. The Agreement identified the Group as registered owners of an aircraft ("the Aircraft"), and assigned equity ownership to each member, with Boulder Falcon holding 74.5 percent. Under the Agreement, each member was required to pay monthly installments for the Aircraft's operation and maintenance as a percentage of its equity ownership.

The Agreement also contained a purchase option for members of the Group, identifying Boulder Falcon as the member with the first right to exercise the purchase option. In this lawsuit, Boulder Falcon alleged Defendants breached the Shared Ownership Agreement by, among other things, selling the Aircraft to Brittany Enterprises without its permission. Brittany Enterprises then turned a profit by selling the Aircraft for $2,300,000.

After a five-day jury trial, the jury found Defendants Brown and IFLYAJET liable to Boulder Falcon for breach of contract and conversion. The jury also found that IFLYAJET is the alter ego of Brown. The jury awarded $1,400,000 in compensatory damages against IFLYAJET and $200,000 in punitive damages against Brown.

## DISCUSSION

### I. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants move for judgment as a matter of law or, in the alternative, a new trial based on insufficiency of the evidence. Under Federal Rule of Civil Procedure 50, the court may grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." FED. R. CIV. P. 50(a)(1). Thus, judgment as a matter of law is only appropriate where "all of the evidence in the record reveals no legally sufficient evidentiary basis

for a claim under the controlling law." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019) (internal quotation marks omitted).

In evaluating a motion for judgment as a matter of law, the court "draws all reasonable inferences in favor of the nonmoving party and does not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Id.* (internal quotation marks omitted). Accordingly, "[j]udgment as a matter of law is cautiously and sparingly granted . . . ." *Id.* (internal quotation marks omitted).

Alternatively, a court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1). "In deciding a new trial motion based on insufficiency of the evidence, a district court must analyze whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013). The court may not grant a new trial due to error "[u]nless justice requires otherwise." FED. R. CIV. P. 61. Rather, "the claimed error [must] substantially and adversely [have] affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008).

Defendants move the court to vacate the jury's award of punitive damages against Brown because the jury failed to award compensatory damages against Brown. Defendants also argue that the evidence presented at trial was insufficient to support Boulder Falcon's conversion claim or breach-of-contract claim. Further, Defendants argue that there is no evidence to support the jury's finding that Brown is the alter ego of IFLYAJET or the jury's award of compensatory damages in the amount of $1,400,000. The court addresses each argument below.

A. **Punitive Damages Award against Brown**

First, Defendants argue that the evidence does not support the award of $200,000 in punitive damages against Brown. Because punitive damages are recoverable only under Plaintiff's conversion claim, the court applies Utah law to this issue. "Under Utah law, if there are no actual damages, an award of punitive damages is improper." *Kilpatrick v. Wiley, Rein & Fielding*, 37 P.3d 1130, 1148 (Utah 2001); *see also* UTAH CODE ANN. § 78B-8-201(1)(a).

Here, the jury indicated $0.00 in economic damages against Brown on the special verdict form. ECF No. 290 ("Jury Verdict") at 4. But the jury did award damages against Brown's company, IFLYAJET, and find that IFLYAJET is the alter ego of Brown. *Id.* at 6. Still, Defendants argue that "[t]he finding that Brown [is] the alter ego of [IFLYAJET] does *not* substitute for a finding of actual damages." Defs.' Mot. at 3-4. The court disagrees.

Plaintiff's alter ego theory against Defendants is governed by Georgia law. *See* ECF No. 293 ("Jury Instructions") at 76. Piercing the corporate veil "rests on the notion that a corporate officer, or owner, who has abused the corporate form by commingling personal and corporate assets, should be held liable for corporate debts and liabilities." *Pazur v. Belcher*, 659 S.E.2d 804, 806-07 (Ga. Ct. App. 2008). This liability theory stems from an abuse of the corporate form, and personal participation in the breach of contract or tort is irrelevant. *See id.* Thus, even if the jury found no personal liability against Brown, Brown could still be held liable for breaches of contract or torts committed by IFLYAJET by abusing the corporate form.

Defendants argue that piercing the corporate veil "only allows Boulder [Falcon] to pursue Brown's assets for [IFLYAJET's] liabilities." Defs.' Mot. at 4. But piercing the corporate veil does much more than this. A finding of alter ego is a finding of personal liability against the officer for acts of the corporation. In this case, the jury's conclusion that IFLYAJET was the mere alter ego of Brown is a conclusion that Brown is "liable for [IFLYAJET's] debts and liabilities." *Pazur*, 659

4

S.E.2d at 806-07. And IFLYAJET's debts and liabilities include compensatory damages the jury found against IFLYAJET.

A case decided by the Georgia Court of Appeals is demonstrative of how an alter ego finding affects an award of damages against multiple defendants. In *Paul v. Destito*, the court declined to separate some of the defendants from an award of punitive damages against another defendant corporation where the jury found the defendants should be treated as alter egos of each other. 550 S.E.2d 739 (Ga. Ct. App. 2001). Defendants here argue that reliance on this case is misplaced because it deals with punitive and not compensatory damages. The court disagrees. Nothing in the case suggests that this method of awarding damages after an alter ego finding would apply only to punitive and not compensatory damages. Damages against a corporation are corporate debts and liabilities whether they are compensatory or punitive.

As Defendants note in their reply, the *Paul* jury specifically found liability against the defendants on an alter ego theory, which is exactly what the jury found in this case. Given that finding in *Paul*, the Georgia court concluded that there was "no basis for separating any of the companies from the punitive damages award." *Paul*, 550 S.E.2d at 748 n.25. The Georgia court even noted that whether the underlying elements for punitive damages were met for some of the defendants was irrelevant because "the jury concluded that all corporate and individual defendants were alter egos of each other and should be treated as the same 'personality.'" *Id.* Similarly here, the jury found that IFLYAJET is the mere alter ego of Brown. Like the defendants in *Paul*, Brown is liable for any damages awarded against IFLYAJET regardless of whether he meets the criteria for those damages. Therefore, the court has no basis in this case to separate the compensatory damages award against IFLYAJET from Brown.

5

Because the jury found that IFLYAJET is the alter ego of Brown, Brown is liable for all IFLYAJET's debts and liabilities, including the compensatory damages award. Thus, the finding of compensatory damages against IFLYAJET supports an award of punitive damages against Brown.

### B.      Evidence to Support Plaintiff's Conversion Claim

Defendants next argue that no reasonable jury could have found that Defendants were liable for conversion because Boulder Falcon presented no evidence that it had a right to immediate possession of the plane. The court disagrees.

First, Defendants argue that Boulder Falcon never owned the plane. As stated repeatedly in court orders, whether Boulder Falcon owned the plane is irrelevant. *See, e.g.*, ECF No. 183 ("MSJ Order") at 26 ("[A] conversion plaintiff need not show that he possessed title to the chattel, but must instead only show that he or she is entitled to immediate possession of the property at the time of the alleged conversion." (internal quotation marks omitted)). The relevant issue is whether Boulder Falcon had an immediate right to possess the plane. But even if ownership were required for Plaintiff's conversion claim, the result would be the same. The Agreement was titled "Shared *Ownership* Agreement" and identified the members as "co-owners of the Aircraft." Shared Ownership Agreement at 1. The jury may have therefore reasonably concluded that the Agreement provided some ownership interest, giving rise to an immediate right to possess the Aircraft.

Defendants argue that the Agreement did not provide any possessory right to Boulder Falcon because it "conferred the exclusive right to determine movement of the [Aircraft] to the Manager." Defs.' Mot. at 4-5. But this provision does not exclude the right of any member to immediate possession of the Aircraft. Further, the Agreement itself states that it is a "lease with purchase option" and identifies Boulder Falcon as the co-owner with the largest initial share of

6

equity ownership in the Aircraft. Shared Ownership Agreement at 1. A jury may conclude from this language that Boulder Falcon had a lease on the Aircraft, giving rise to an immediate right to possess the Aircraft.

Finally, pursuant to the Agreement, the Aircraft's home base was in Utah, where Boulder Falcon was headquartered. The home base was not in Georgia where the other Group members were located. The Agreement also provided that the home base could not be changed without the permission of all Group members. From this evidence, as well as the testimony of Boulder Falcon's CEO, Jeffrey Vitek ("Vitek"), regarding how he understood the terms of the Agreement, a reasonable jury may have concluded Boulder Falcon had a right to immediate possession and that Defendants were liable for conversion. Thus, there is sufficient evidence to support the jury's verdict on Plaintiff's conversion claim.

### C. Evidence to Support Plaintiff's Breach-of-Contract Claim

Defendants also argue that the evidence presented at trial was insufficient to establish Plaintiff's breach of contract claim. Specifically, Defendants argue that there is no evidence to support that there was a valid contract,[1] Defendants breached the Agreement, or that Brown agreed to be bound by the Agreement. The court disagrees.

At trial, the only issue regarding whether a valid contract existed was whether Boulder Falcon had accepted the Agreement. Vitek testified that he signed the Agreement and had an assistant mail it to IFLYAJET. A reasonable jury could believe his testimony and determine that Boulder Falcon assented to the contract. But even if Vitek had not delivered or signed the

---

[1] The court notes that Defendants argue here that the Shared Ownership Agreement is not a valid contract yet filed a motion for attorney fees under the Shared Ownership Agreement.

Agreement, a signature was not required for Boulder Falcon to accept the contract. Jury Instructions at 55. There was also evidence presented that Boulder Falcon performed under the contract by making monthly payments to IFLYAJET, which the jury could reasonably conclude manifested an acceptance of the contract. Even Defendants concede that Boulder Falcon was using the plane and making payments. And the payments aligned with Boulder Falcon's share of the operation and upkeep costs under the Agreement, 74.5 percent. This is more than enough evidence for a jury to find Boulder Falcon accepted the Agreement and thus a valid contract existed.

There was also ample evidence that IFLYAJET breached the Agreement. For example, evidence presented at trial demonstrated that Defendants failed to register the Agreement with the Federal Aviation Administration and failed to provide notice that they intended to sell the Aircraft as required under the Agreement. *See* Shared Ownership Agreement at 2, 5. Further, the Agreement explicitly provides that the Manager, Brown, "shall not . . . exercise the purchase option without the unanimous written consent of the Members." *Id.* at 7; *see also id.* at 3 ("[T]he Manager may not make any of the following decisions or action without first obtaining the written consent of Members owning 100% of the Percentage Interests: . . . the Group's sale, lease, or disposition of the Aircraft . . . ."). There was no evidence or argument that IFLYAJET even attempted to obtain the consent of Boulder Falcon before selling the Aircraft to Brittany Enterprises. The Agreement also requires the Manager to maintain accurate records and take any action necessary "for the continuation of the Group's valid existence as registered owners." *Id.* at 3. Plaintiff presented evidence that Defendants failed to make lease payments on the Aircraft and failed to keep accurate records.

Finally, the jury heard evidence that Brown agreed to be personally bound by the Agreement. Brown drafted the Agreement that appointed him Manager of the Group. The

8

Manager's duties under the Agreement included overseeing the maintenance and schedule of the Aircraft, keeping accurate records, and ensuring compliance with regulations. A jury could infer from this evidence that Brown acquiesced to the terms of the Agreement in his personal capacity and agreed to be individually bound by the Agreement.

### D. Evidence to Support Alter Ego Finding

Defendants next argue that there was no evidence to support the jury's finding that Brown was the alter ago of IFLAYJET. But Plaintiff presented a plethora of evidence to show that Brown failed to maintain corporate formalities for IFLYAJET and may have even comingled assets. Deposition testimony of IFLYAJET's accountant and Brown's wife, Eliza Brown, established that IFLAYJET failed to keep accurate books and records. In her deposition, she repeatedly testified that she could not recall events and entries relating to her bookkeeping. Boulder Falcon's accountant also testified that she often received inaccurate invoices from IFLYAJET. Further, Eliza Brown testified that she used IFLYAJET's business credit cards for personal expenses and there was evidence presented to the jury that Brown concealed his ownership of the company that primarily maintained the Aircraft, Turbine Maintenance Group. A jury could find from this evidence that Brown "disregarded the corporate entity and made it a mere instrumentality for the transaction of his own affairs." Jury Instructions at 76.

### E. Evidence to Support Amount of Compensatory Damages

Finally, Defendants argue that there is no evidence of damages in the amount of $1,400,000. But Plaintiff presented evidence that Brittany Enterprises sold the Aircraft, which had a note payoff of $920,000, for $2,300,000. This would have given Boulder Falcon a profit of $1,380,000 if given the opportunity, as provided in the Agreement, to pay off the Aircraft's note. By breaching the contract and selling the plane to Brittany Enterprises, Defendants prevented

Boulder Falcon from realizing that profit. Thus, damages in the amount of $1,400,000 were supported by the evidence presented at trial.

\* \* \*

Because the jury found that IFLYAJET is the alter ego of Brown, an award of compensatory damages against IFLYAJET supports the jury's award of punitive damages against Brown. There is also ample evidence to support the jury's finding for conversion, breach of contract, alter ego, and $1,400,000 in compensatory damages. Thus, Defendants have not met their burden in showing insufficiency of the evidence to support judgment as a matter of law or a new trial. Accordingly, the court DENIES Defendants' Motion for Judgment as a Matter of Law and Defendants' Motion for a New Trial.

## II. MOTIONS FOR ATTORNEY FEES

Both parties also move for an award of attorney fees under the Shared Ownership Agreement. Under the Agreement, "[i]f an action is brought to enforce or interpret the provisions and conditions of this Agreement, the prevailing party shall be entitled to recover its actual attorneys' fees and costs." Shared Ownership Agreement at 9. Both parties agree that the Agreement, including the attorney fees provision, is governed by Georgia law. *See also id.* ("This Agreement is governed by, and will be construed and enforced in accordance with, the laws of the State of Georgia."). But both parties interpret "prevailing party" differently and argue that they are entitled to fees as the prevailing party.

### A. Boulder Falcon is the Prevailing Party

The court entered judgment on November 5, 2024 "in favor of plaintiff Boulder Falcon, LLC and against Defendants Robert Brown and IFLYAJET, Inc., who are jointly and severally liable, in the amount of $1,400,000 in compensatory damages." ECF No. 295 ("Judgment").

Despite the judgment, Defendants argue that they are the prevailing party on Plaintiff's breach-of-contract claim because (1) the jury awarded zero damages against Brown and (2) the verdict form did not specify whether damages were awarded for breach of contract or conversion.

First, the fact that the jury awarded zero damages against Brown is irrelevant. Defendants cite *Benchmark Builders, Inc. v. Schultz* for the proposition that a defendant prevails "by not having any relief imposed against them." 294 Ga. 12, 14 (2013). But in that case, the court upheld an award of attorney fees where the defendants prevailed on their counterclaim for breach of contract. Here, the jury did not find for Defendants on their breach-of-contract counterclaim against Boulder Falcon. Therefore, *Benchmark Builders* is not persuasive.

Here, not only did the jury find for Boulder Falcon on its breach-of-contract claim against IFLYAJET and Brown, it also awarded damages against IFLYAJET and found that IFLYAJET is the alter ego of Brown. As discussed above, a finding of damages against IFLYAJET is a finding of damages against Brown because the alter ego finding compels the court to treat Defendants "as the same 'personality.'" *Paul*, 550 S.E.2d at 748 n.25. Thus, the jury's award of damages against IFLYAJET is a damages award against Brown.

The failure of the verdict form to specify damages awarded for each claim is also irrelevant. In this case, there was no difference in injury caused by Defendants' breach of contract and their conversion of the Aircraft. Here, Plaintiff alleged that Defendants breached the Agreement and interfered with its immediate right to possess the Aircraft by selling it without Boulder Falcon's permission. And the damages awarded by the jury reinforce this notion. The jury awarded $1,400,000 in compensatory damages, which is the profit Boulder Falcon could have made had the Aircraft not been sold to Brittany Enterprises without its approval. This is the sole injury caused

11

by Defendants' conversion and their breach of contract and the only theory of damages that Plaintiff presented to the jury.

Defendants also suggest that the damages the jury awarded were only for conversion, not breach of contract. Because Plaintiff is only entitled to an award of attorney fees on its breach of contract claim, Defendants argue that Plaintiff is not entitled to fees. But even Defendants admitted throughout this lawsuit that there can be no conversion without a breach of contract because only the Agreement gave Boulder Falcon the possessory interest in the aircraft. In their objection to Plaintiff's special verdict form, Defendants argued that "Boulder's conversion claim derives entirely from the right to ownership or the right to immediate possession. Those rights are dependent on the Shared Ownership Agreement. In other words, there is no scenario where the jury can determine there was a conversion or award damages for conversion in the absence of an enforceable Shared Ownership Agreement." ECF No. 239 at 8. Therefore, the jury awarded damages for Plaintiff's breach of contract and conversion claims.

Plaintiff Boulder Falcon is clearly the "prevailing party" under the Shared Ownership Agreement and is therefore entitled to fees pursuant to the contract. On the other hand, Defendants are not the prevailing party and are not entitled to recover fees under the contract. The court thus DENIES Defendants' Motion for Attorney Fees.

    **B.**    **Boulder Falcon is Entitled to Collect Actual Attorney Fees**

Boulder Falcon moves the court to award it $1,424,619.50 in attorney fees. Under the Shared Ownership Agreement, the party that prevails in an action to enforce the Agreement is entitled to "actual attorneys' fees and costs." Shared Ownership Agreement at 9. There is no requirement that the fees be reasonable. However, Defendants argue that Boulder Falcon failed to apportion its fees between the breach-of-contract claim, the conversion claim, and the unjust

enrichment claim.[2] Boulder Falcon argues that it need not apportion the fees because the Agreement was central to the dispute and both claims were "so intertwined that work performed in connection with other claims was necessary as well for the claim on which fees were allowed." Pl.'s Mot. Att'y Fees at 3 (quoting *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 820 S.E.2d 197, 204 (2018)). The court agrees.

As the court noted above, Plaintiff's conversion claim stems from the rights granted to Boulder Falcon in the Shared Ownership Agreement. And Defendants have pursued this theory throughout litigation. Because Plaintiff's conversion claim derives directly from its breach-of-contract claim, it would be impossible for Plaintiff to allocate fees between the two claims.

Further, Plaintiff's unjust enrichment claim also "involve[d] a common core of facts and related legal theories." *Fatt Katt Enters. V. Rigsby Constr., LLC*, 2018 U.S. Dist. LEXIS 250848 (N. D. Ga. 2018). Indeed, the claim for unjust enrichment relied on the jury's determination as to whether the Shared Ownership Agreement was a valid contract. Thus, it would be impossible for Plaintiff's attorneys to divide the time spent on each claim. In short, all of Plaintiff's claims stem from the Shared Ownership Agreement and Defendants' decision to sell the Aircraft without Boulder Falcon's permission.

Because Plaintiff's claims were so intertwined, it need not allocate fees for each claim. And under the contract, Plaintiff is entitled to recover actual attorney fees billed in this case. The declaration of Plaintiff's lead counsel indicated that the firm who worked on this case billed Plaintiff $1,424,619.50 in attorney fees to enforce Boulder Falcon's rights under the Shared

---

[2] Defendants also argue that Boulder Falcon did not allocate its "alter ego claim[]." But alter ego is not a claim. It is a theory of liability as to Plaintiff's breach of contract, conversion, and unjust enrichment claims.

Ownership Agreement. ECF No. 297 ("Benevento Decl.") ¶ 14. Accordingly, the court GRANTS Plaintiff's Motion for Attorney Fees.

## CONCLUSION AND ORDER

For the reasons above, the court DENIES Defendants' Motion for Judgment as a Matter of Law (ECF No. 306), GRANTS Plaintiff's Motion for Attorney Fees (ECF No. 296), and DENIES Defendants' Motion for Attorney Fees (ECF No. 301). The court ORDERS Defendants to pay Plaintiff $1,424,619.50 in attorney fees.

DATED July 16, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge